FILED
CLERK
9/25/2026
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
MANUEL JIMENEZ,

*Plaintiff*,

-against-

YAMAHA MOTOR FINANCE CORPORATION, U.S.A.,
TRANS UNION LLC,

*Defendants*.
----------------------------------------------------------X

**ORDER**

2:25-cv-07108-JMA-JMW

**WICKS**, Magistrate Judge:

Plaintiff brought this action under the Fair Credit Reporting Act ("FCRA") on December 29, 2025 (ECF No. 1) alleging that a non-party named Gilberto Rosa used Plaintiff's personal information to fraudulently apply for one or more vehicle loans, including one reported by Defendant Yamaha Motor Finance Corporation, U.S.A. ("Yamaha"). (*Id.* at ¶¶ 10–22.) Before the Court is Plaintiff's motion to compel certain categories of discovery from Defendant Trans Union LLC ("Trans Union"). (ECF No. 22.) For the following reasons, Plaintiff's motion is **GRANTED** in part and **DENIED** in part.

**BACKGROUND**

In October of 2025, Plaintiff notified Defendant Trans Union of the fraudulent accounts that had been opened in his name, but Trans Union allegedly failed to conduct a reasonable investigation, in violation of its statutory duties under the FCRA. (ECF No. 1 at ¶¶ 23–33.) Trans Union issued a credit report in December of 2025 that still displayed the fraudulent Yamaha

account, "demonstrating Trans Union's failure to properly investigate, block, and correct information resulting from identity theft[,]" according to Plaintiff. (*Id.* at ¶ 32.) The Complaint asserts several causes of action against Trans Union, including failure to conduct a reasonable reinvestigation in violation of 15 U.S.C. § 1681i; failure to follow reasonable procedures to ensure accuracy of credit reports in violation of 15 U.S.C. § 1681e(b); and failure to block identity theft information in violation of 15 U.S.C. § 1681c-2. (*Id.* at ¶¶ 75–106.)

The Court held an initial conference on February 26, 2026, setting dates for discovery that included August 15, 2026 for the completion of fact discovery and January 30, 2027 for the completion of all discovery including expert discovery. (ECF No. 19.) The Court held a status conference on July 23, 2026, extending the close of fact discovery to October 16, 2026 and the close of all discovery to March 31, 2027. (*See* Electronic Minute Entry for the Status Conference held on July 23, 2026.)

On August 4, 2026, Plaintiff filed the present motion to compel. (ECF No. 22; the "Motion.") The Motion seeks to compel Trans Union to supplement its responses to certain document requests, interrogatories, and requests for admission. (*See generally id.*) The events leading to the Motion are as follows. Trans Union served its responses and objections to Plaintiff's discovery requests on April 1, 2026. (ECF No. 22-1.) Relevant here, Trans Union refused to produce documents relating to Trans Union's policies, procedures, training manuals, and systems on the grounds that these requests were purportedly unrelated to and beyond the scope of Plaintiff's claim, which arose out of Trans Union's reporting and reinvestigation of a single Yamaha account after Plaintiff's October 2025 dispute. (*Id.*) As for Plaintiff's interrogatories—which sought, *inter alia*, the identities of employees with relevant information, a chronological narrative of Trans Union's investigation of Plaintiff's dispute, and Trans Union's

interpretation of its obligations under relevant statutes—Trans Union responded to most of them by directing Plaintiff to Trans Union's 268-page document production generally without providing pin cites. (*Id.*)

The parties met and conferred to discuss each other's productions and responses. In an email dated June 23, 2026, Plaintiff's counsel purported to memorialize that conversation, as follows:

> In accordance with our mutually agreed upon deadline of Friday, June 26, 2026, my client will be providing amended responses to Interrogatory Nos. 3 and 19; Request for Production Nos. 13 and 19; and supplemental document production.
>
> In kind, per our discussion, your client will provide amended or supplemental document production and responses to Plaintiff's Request for Production Nos. 1–7 (policies, procedures, manuals, and training materials), Nos. 24–26 and 28–30 (documents supporting Trans Union's Answer Denials); Interrogatory Nos. 1–3 (personnel identification), Nos. 4–9 (factual bases for answer denials), Nos. 12 and 15 (reinvestigation details); and Requests for Admission Nos. 2, 5, and 6.
>
> I appreciate the amicable discussion and attempt at resolution prior to court intervention.

(ECF No. 22-10 at 8–9.)

On June 26, 2026, Trans Union's counsel responded that he needed "a little more time to get TU's response[,]" to which Plaintiff's counsel consented. (*Id.* at 7–8.) On July 2, 2026, Trans Union's counsel wrote, "Should have the supplemental response and production for you by next week." (*Id.* at 6.) Finally, on July 13, 2026, Trans Union's counsel responded as follows:

> Trans Union will agree to supplement ROG narratives and pin cites, where applicable, but Trans Union will decline to produce the procedures given Trans Union's reporting was accurate. Per Plaintiff's dispute, your client claimed to have no association to the documents but his written agreement with Rosa proves the opposite and there is clear evidence that Plaintiff controlled the account. Furthermore, Trans Union's RFAs do not require supplementation as our answers are complete.

(*Id.* at 5.)

In a follow-up email, Trans Union's counsel added that Plaintiff's counsel was "mistaken" about the terms of their agreement at the June 23, 2026 meet and confer, asserting that he "would not have promised to produce anything[.]" (*Id.* at 3.)

Accordingly, on August 4, 2026, Plaintiff filed the present Motion. The Motion seeks to compel Trans Union to supply documents about its policies and procedures; documents withheld on the basis of confidentiality; answers to Plaintiff's interrogatories beyond vaguely referring Plaintiff to the document production; and answers to certain requests for admission. (ECF No. 22.)

On August 12, 2026, Trans Union responded that the Motion should be denied as moot, because, "in an effort to resolve this dispute without further judicial intervention, Trans Union has agreed to provide the relevant policy and procedure manuals, provide pin cites and additional narratives for the Interrogatory responses, and supplement its responses to the disputed Requests for Admission to include further detail." (ECF No. 23.) "Nevertheless," Trans Union also took the position that its previous responses were "substantially justified[,]" because the document production demonstrates that Plaintiff in fact did enter into the disputed Yamaha lease pursuant to a consignment agreement with Gilberto Rosa. (*Id.* at 2.) Because Trans Union's reporting of Plaintiff's credit account was accurate, Plaintiff's claims under Sections 1681e(b) and 1681i of the FCRA must fail as a matter of law; hence "details of Trans Union's trade-secret procedures [are] unnecessary" and "the reasonableness of Trans Union's procedures is irrelevant." (*Id.*)

On August 28, 2026, Plaintiff filed a reply at the Court's invitation. (ECF No. 25.) Plaintiff concedes that Trans Union's supplemental responses to Plaintiff's requests for admission are sufficient. (*Id.* at 5.) The Court therefore considers that branch of the Motion now moot. *See Supplement Mfg. Partner v. Glob. Widget*, No. 24-CV-05596 (SJB) (JMW), 2025 WL

2163290, at *3 (E.D.N.Y. July 30, 2025) (denying as moot that branch of the motion to compel where, shortly after the plaintiff filed its motion to compel, the defendant provided satisfactory supplemental responses). The remaining two branches, namely, the document requests and interrogatories, are considered below.

## THE LEGAL FRAMEWORK

"Motions to compel are left to the court's sound discretion." *Bartlett v. DeJoy*, No. 22-CV-03398 (GRB)(JMW), 2023 WL 3306963, at *1 (E.D.N.Y. May 7, 2023) (citation omitted). Pursuant to Fed. R. Civ. P. 26:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Information "is relevant if: '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'" *Pincus Law Group, PLLC v. MJ Connections, Inc.*, No. 23-cv-05528 (SJB)(JMW), 2025 WL 1070384, at *2 (E.D.N.Y. Apr. 9, 2025) (quoting *Vaigasi v. Solow Mgmt. Corp.*, No. 11-CV-5088 (RMB)(HBP), 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016)) (quoting Fed. R. Evid. 401). "Under the amended rules, '[r]elevance is still to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense.'" *Muslims on Long Island, Inc. v. Town of Oyster Bay*, No. 25-cv-00428 (SJB) (JMW), 2025 WL 1808677, at *3 (E.D.N.Y. July 1, 2025) (quoting *Goss v. E.S.I. Cases & Accessories, Inc.*, No. 18-CV-2159 (GBD)(JLC), 2019 WL 3416856, at *2 (S.D.N.Y. July 30, 2019)).

Rule 34 mandates production of responsive documents "in the responding party's possession, custody, or control[.]" Fed. R. Civ. P. 34(a)(1). Encompassed within this mandate is the obligation to make efforts to obtain information within its legal reach. If a party has the "practical ability to obtain and produce the documents" then it has "possession, custody, or control" over such document. *Signify Holding B.V. v. TP-Link Rsch. Am. Corp.*, No. 21-CV-9472 (JGK)(KHP), 2022 WL 3704001, at *2 (S.D.N.Y. Aug. 26, 2022).

"An interrogatory may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). Interrogatories may be used to ask for "an opinion or contention that relates to fact or the application of law to fact," unless the court orders otherwise. *Id.*[1] If the information requested can be readily ascertained by reviewing documents, then the responding party has the option to direct the requesting party to the document production, as long as the responding party "specif[ies] the records that must be reviewed[] in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could[.]" Fed. R. Civ. P. 33(d).

It is against this backdrop that the Court considers the motion.

## DISCUSSION

### A. Document Requests

In its opposition dated August 12, 2026, Trans Union states that it has agreed to provide the documents Plaintiff requested, "with the exception of the materials sought by Plaintiff that do not exist." (ECF No. 23 at 1.) Subsequent to that filing, on August 27, 2026, Trans Union

---

[1] In the Southern District, interrogatories at the commencement of discovery are limited to those seeking names of witnesses, computation of damages, custodians, and a general description of documents and other evidence, whereas interrogatories seeking claims and contentions may not be served until later. Local Civil Rule 33.3. No such limitation on "contention interrogatories" exists in the Eastern District. *See id.* (noting that it is for the "Southern District Only").

supplemented its responses to Plaintiff's interrogatories and requests for admission, but it did not produce additional documents. (ECF No. 25 at 1.) Instead, Trans Union's counsel represented that they would "forward [Plaintiff's counsel] the procedure documents as soon as we receive it from Trans Union." (*Id.* (citing ECF No. 25-3 at 2).)

Plaintiff, not satisfied with this timeframe, complains that "[s]ixteen days after representing that its supplementation would moot this motion, there is no policy, no procedure, no manual, and no training material." (*Id.* at 4.) Trans Union's commitment to producing the requested documents as soon as they become available is acceptable—but only to a point. Although fact discovery remains open until October 16, 2026 (*see* Electronic Minute Entry for the Status Conference held on July 23, 2026), it began back in February (*see* Electronic Minute Entry for the Initial Conference held on February 26, 2026), and by the beginning of April the parties had already served discovery requests and exchanged responses and objections thereto (*see* ECF No. 22-1). At this juncture the production should have occurred at least on a rolling basis. *See* Fed. R. Civ. P. 34(b)(2)(B) ("The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response."); *see also, e.g.*, *Briskin v. City of New York*, No. 24-CV-03557 (JAV), 2026 WL 1283325, at *2 (S.D.N.Y. May 11, 2026) ("[T]he Court ordered Defendants to immediately begin ESI production on a rolling basis[.]").

Trans Union is directed to continue to produce as documents become available, on a rolling basis. In the joint status report that the parties are scheduled to file on October 2, 2026, the parties shall advise the Court on the progress of Trans Union's production. Trans Union's production must be complete by that date.

**B. <u>Interrogatories</u>**

Plaintiff contends that, even after the supplemental responses received on August 27, 2026, Trans Union's responses to several interrogatories remain deficient. (*See* ECF No. 25 at 5.) Specifically, the Motion sought supplemental responses to Interrogatory Nos. 1–3, 4–9, 12 and 15. (ECF No. 22 at 4.) In the reply, Plaintiff highlights continued purported deficiencies in Interrogatory Nos. 2, 8, and 15. (ECF No. 25 at 5.) Indeed, from the Court's review, it appears that the other contested interrogatories have now been answered in full. (*See* ECF No. 25-1.) Accordingly, the Court limits its analysis to Interrogatory Nos. 2, 8, and 15.

*1. <u>Interrogatory No. 2</u>*

Interrogatory No. 2 requests as follows:

> IDENTIFY the person(s) designated by TRANS UNION as most knowledgeable (pursuant to Fed. R. Civ. P. 30(b)(6) or otherwise) regarding YOUR policies, procedures, and practices for:
>
> a. Compliance with the FCRA generally during the RELEVANT TIME PERIOD, including 15 U.S.C. §§ 1681c-2, 1681e(b), and 1681i.
> b. Receiving, processing, and responding to consumer disputes submitted to YOU, particularly those involving identity theft.
> c. The functionality and use of the e-OSCAR system and ACDVs.
> d. The implementation, or decision not to implement, an identity theft block pursuant to 15 U.S.C. § 1681c-2.
> e. Employee training in dispute resolution and identity theft claims.
> f. The specific reinvestigation(s) conducted in response to Plaintiff's dispute.

(ECF No. 22-1 at 3.)

Trans Union objected on the grounds that Interrogatory No. 2 "seeks information unnecessary to this litigation and beyond the requirements of the Federal Rules of Civil Procedure . . . and far beyond the scope of Plaintiff's claims." (*Id.*) Trans Union added that, to the extent Interrogatory No. 2 sought the identity of Trans Union's Rule 30(b)(6) representative, "Trans Union states that it has not yet determined which witness(es) would be best qualified to testify regarding the relevant portions of this Interrogatory, but that it will timely identify the

appropriate representative(s) upon receipt of a properly issued Notice of Deposition served pursuant to Rule 30(b)(6).” (*Id.*)

In its supplemental responses served after Plaintiff filed the Motion, Trans Union did not supplement this response. (*See* ECF No. 25-1 at 3.) Assuming this was intentional and not an oversight, that means Trans Union stands by its original objections.

Trans Union’s first objection is meritless. The topics addressed in this Interrogatory—compliance with the FCRA generally, processing of consumer disputes generally, the specific reinvestigation of Plaintiff’s dispute—are at the heart of this litigation. And Trans Union’s assertion that discovery should be limited because the credit report in question was in fact correct completely misses the point. Understandably, Trans Union insists that the credit report it issued was correct. That is why the scope of discovery is determined by reference to the allegations in the complaint, just the allegations with which a defendant agrees. “A party may not resist discovery by challenging the merits of a claim or defense. Discovery exists to determine if a claim or defense has merit; discovery does not exist to adjudicate the merits of claims and defenses that have not yet been substantiated.” *Sw. Payroll Serv., Inc. v. Pioneer Bank*, No. 1:19-CV-01349 (FJS/CFH), 2024 WL 6967376, at *5 (N.D.N.Y. Feb. 27, 2024) (internal citation omitted); *see also, e.g.*, *Nw. Biotherapeutics, Inc. v. Canaccord Genuity LLC*, No. 22 CIV. 10185 (GHW) (GS), 2026 WL 412081, at *4 (S.D.N.Y. Feb. 13, 2026) (“Ultimately, it will be Plaintiff’s burden, on either summary judgment or at trial, to prove its allegations . . . . But for now, Defendants must comply with their discovery obligations to the best of their ability based on the information Plaintiff has provided.”) (citation modified; internal citations omitted).

Trans Union’s second objection, however, has validity. Interrogatory No. 2 essentially asks Trans Union to identify its Rule 30(b)(6) witness before Plaintiff even serves his Rule

30(b)(6) notice. Rule 30(b)(6) mandates that a notice for the deposition of a corporation "must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). Once that occurs, the corporation is then in a position to determine whom it will designate as its corporate representative. *Id.* Plaintiff here puts the cart before the horse.

It is not clear why Plaintiff needs this information now, before a notice is served. Once Plaintiff serves a Rule 30(b)(6) notice, Trans Union will be obligated to designate a witness or witnesses depending on topics. Furthermore, this Interrogatory overlaps significantly with Interrogatory Nos. 1 and 3, which seek, respectively, the identities of individuals with knowledge relevant to Plaintiff's claims and of employees who participated in Plaintiff's dispute. (*See* ECF No. 22-1 at 2–4.) Accordingly, Trans Union does not need to supplement its response to Interrogatory No. 2. *See* Fed. R. Civ. P. 26(b)(2)(C) (requiring courts to limit discovery that is unreasonably cumulative or duplicative).

*2. <u>Interrogatory No. 8</u>*

Interrogatory No. 8 requests as follows:

> For each of the following denials and Affirmative Defenses in YOUR ANSWER, state in detail all facts upon which YOU base YOUR assertion, IDENTIFY all persons with knowledge of such facts, and IDENTIFY all DOCUMENTS that support or evidence such facts:
>
> . . . .
>
> YOUR denial of the continued inaccurate reporting of the FRAUDULENT ACCOUNT(S) after receipt of PLAINTIFF'S DISPUTE YOUR denial of YOUR deliberate failure to timely block the reporting of the information related to the FRAUDULENT ACCOUNT(S) pursuant to 15 U.S.C. § 1681c-2(a).

(ECF No. 25-1 at 4–5, 12.)

Trans Union replies only that it "does not concede that the disputed Yamaha Motor tradeline is fraudulent or that Trans Union violated any part of the FCRA following Plaintiff's purported November 7, 2025 dispute." (*Id.* at 12.)

Clearly, Trans Union's bald denial that the disputed timeline is fraudulent does not answer Plaintiff's question, which asked for the *basis* of that denial. "Interrogatories 'may relate to any matter that may be inquired into under Rule 26(b) ... [and] is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact....'" *Stavola v. Macro Digital Tech. Corp.*, No. 24-CV-00026 (GRB) (JMW), 2025 WL 2240297, at *3 (E.D.N.Y. Aug. 6, 2025) (quoting *Edebali v. Bankers Standard Ins. Co.*, No. CV 14-7095 (JS) (AKT), 2016 WL 4621077, at *2 (E.D.N.Y. Sept. 6, 2016)) (alterations in original). As explained above, a defendant may not wriggle out of discovery merely by denying the allegations in the complaint. Trans Union must supplement its response to Interrogatory No. 8 setting forth the basis of the denial. This is not simply a pleading, but a discovery device.

*3. Interrogatory No. 15*

Interrogatory No. 15 requests as follows:

> State YOUR interpretation of the requirement under 15 U.S.C. § 1681i(a)(2)(B) to provide "all relevant information regarding the dispute" to the furnisher. Explain how YOUR actions in this case, particularly the content of the ACDVs you sent, complied with YOUR interpretation of this statutory duty.

(ECF No. 22-1 at 20.)

Trans Union responded that the answer to this Interrogatory could be found somewhere in the 268-page document production. (*Id.*) Trans Union also objected to the extent the Interrogatory "impermissibly" asked Trans Union to describe its legal interpretation of a federal statute. (*Id.*) In its supplemental responses served after Plaintiff filed the Motion, Trans Union did not supplement this response. (*See* ECF No. 25-1 at 17.)

Trans Union's attempt to direct Plaintiff to the document production is inadequate. Even if the answer to this Interrogatory can be found somewhere in the production, Rule 33 requires Trans Union to "specify[] the records that must be reviewed[] in sufficient detail to enable

[Plaintiff] to locate and identify them as readily as [Trans Union] could[.]" Fed. R. Civ. P. 33(d); *see also Suntree Int'l Corp. v. Rossi*, No. 19-CV-3845 (NG), 2020 WL 13581657, at *1 (E.D.N.Y. Mar. 26, 2020) ("[D]efendants vaguely refer to their respective document productions, without further detail or information. These responses do not comply with Rule 33(d)(1)[.]"); *Shim-Larkin v. City of New York*, No. 16CV6099AJNKNF, 2018 WL 3187327, at *10 (S.D.N.Y. June 28, 2018) (finding response inadequate where defendant pointed plaintiff to the defendant's equal employment opportunity policy but did not identify the specific portion of the policy that was responsive).

Trans Union's objection that it is "impermissibl[e]" to use an interrogatory to ask about statutory interpretation, however, is not entirely unfounded. Courts have ruled that legal analyses and conclusions are not the proper subject of interrogatories. *See Grant v. Geller*, No. 20CV4406HGCLP, 2023 WL 2697739, at *4 (E.D.N.Y. Mar. 29, 2023) ("These interrogatories clearly require defendant to engage in a legal analysis and provide a legal conclusion . . . , and therefore are not the proper subject of interrogatories."); *Benavidez v. Burger Bros. Rest. Grp., Inc.*, No. CV17200DRHAKT, 2019 WL 1459044, at *2 (E.D.N.Y. Mar. 29, 2019) (finding interrogatory "improper in that it calls for a legal conclusion"). Yet at the same time, Rule 33 expressly permits interrogatories that "ask[] for an opinion or contention that relates to fact or the application of law to fact[.]" Fed. R. Civ. P. 33(a)(2). To resolve this apparent contradiction, the Advisory Committee has explained that although the "application of law to fact" is fair game, questions of "pure law" are off-limits. Advisory Committee's Notes to 1970 Amendment to Rule 33. "Pure law" is defined as "legal issues unrelated to the facts of the case." *Id.*; *see, e.g.*, *Jindan Wu v. Seoul Garden, Inc.*, No. 116CV03613ARRST, 2018 WL 507315, at *9 n.2 (E.D.N.Y. Jan.

22, 2018) ("Although these are close to legal conclusions, they are proper as they ask for an application of the facts to the law and not for a pure interpretation of the law.").

Here, Interrogatory No. 15 comprises two sentences, which fall on opposite ends of the line. Plaintiff first asks Trans Union for its "interpretation of the requirement under 15 U.S.C. § 1681i(a)(2)(B) to provide 'all relevant information regarding the dispute' to the furnisher." (ECF No. 22-1 at 20.) This calls for Trans Union to pontificate in the abstract, so it is an impermissible question of "pure law." Trans Union does not need to answer as to the first sentence. The second sentence, however, is a horse of a different color since it asks "how YOUR actions in this case, particularly the content of the ACDVs you sent, complied with YOUR interpretation of this statutory duty." (ECF No. 22-1 at 20.) This is about the "application of law to fact," so it is permissible. Trans Union must answer this half of Interrogatory No. 15.

Trans Union is directed to supplement its responses to Interrogatory No. 8 and the latter half of Interrogatory No. 15 on or before October 1, 2026. *See Muslims on Long Island*, 2025 WL 1808677, at *3 (collecting cases requiring the party responding to an interrogatory to obtain information "to fully and completely answer the interrogatories"); *Edebali*, 2016 WL 4621077, at *5 (directing plaintiff to produce relevant, obtainable documents to further supplement its initial interrogatory response). In the joint status report that the parties are scheduled to file on October 2, 2026, the parties shall advise the Court on the adequacy of Trans Union's responses.

C. **Attorneys' Fees**

Plaintiff seeks sanctions of attorneys' fees under Rule 37(a)(5)(A), which provides that "[i]f the motion [to compel] is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must . . . require the [opposing party and/or its attorney] to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."

Fed. R. Civ. P. 37(a)(5)(A). However, the Rule also provides that such payment must not be ordered if "the opposing party's nondisclosure, response, or objection was substantially justified" or if "other circumstances make an award of expenses unjust." *Id.*

The Court declines to impose sanctions at this time based upon the circumstances presented. Imposing sanctions under the circumstances would be draconian and unjust. *See 6340 NB LLC v. Cap. One, N.A.*, No. 20CV02500OEMJMW, 2023 WL 7924176, at *9 (E.D.N.Y. Nov. 16, 2023) (declining to issue sanctions under Rule 37(a)(5)(A) where, among other factors, "both parties made efforts to meet and confer prior to filing"); *Hard Chrome Sols. LLC v. Mach. Equip. Rebuilders*, No. 22CV3439ENVMMH, 2023 WL 6370867, at *4 (E.D.N.Y. Sept. 30, 2023) (concluding that sanctions under Rule 37(a)(5) were "not warranted" where defendant "made additional assurances of his good faith and intent to comply with discovery requirements"); *Doe v. Mastoloni*, No. 3:14-CV-00718 (CSH), 2016 WL 347292, at *3 (D. Conn. Jan. 28, 2016) (declining to issue sanctions under Rule 37(a)(5)(A) where "[a]lthough Plaintiffs did not prevail . . . , some decisions arguably favored Plaintiffs, and the question was close enough to leave the parties bearing their own expenses"). However, Defendant is on notice that future failures to comply could lead to imposition of sanctions including awarding fees to Plaintiff for non-compliance or failure to produce.

## CONCLUSION

For the reasons stated, Plaintiff's Motion (ECF No. 22) is **GRANTED in part and DENIED in part**, as set forth above. Specifically, Trans Union's document production must be complete by **October 2, 2026**; and Trans Union must supplement its responses to Interrogatory Nos. 8 and the latter half of 15, but it does not need to answer Interrogatory Nos. 2 and the first half of 15. The parties are directed to file a joint status report on **October 2, 2026**.

Dated: Central Islip, New York
September 25, 2026

**SO ORDERED:**

/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge